Herman Banks **TAYLOR, Jr.,** Plaintiff in Error,

v.

**STATE** of Tennessee, Defendant in Error.

Court of Criminal Appeals of Tennessee.

Oct. 12, 1971.

Certiorari Denied by Supreme Court
Jan. 3, 1972.

Hooker, Keeble, Dodson & Harris, Nashville, for plaintiff in error.

David M. Pack, Atty. Gen., Bart Durham, Asst. Atty. Gen., Nashville, Charles S. Ramsey, Jr., Dist. Atty. Gen., Manchester, for defendant in error.

OPINION

RUSSELL, Judge.

The plaintiff-in-error was convicted of voluntary manslaughter upon his trial for the murder of his wife. Unquestionably the victim was shot to death while in the presence of her husband and her brother. The three of them were upon the husband's

farm in Warren County. The couple was estranged, and divorce proceedings were pending. The chance meeting which led to the joint farm visit was emotionally charged. Mrs. Taylor had obtained the key to the lock that secured the farm entrance, and would not surrender it until she could inspect the premises.

As the parties apparently prepared to leave, the argument heated up. The State proved by the eye-witness brother of the victim that Taylor produced a gun from his pocket, shot his wife in the head, and threatened to kill the brother. The defendant contended that his wife produced the gun from her purse, that he struggled with her, and that she accidentally shot herself in the head.

It is unnecessary for us to detail all of the evidence pro and con. The defendant introduced two other alleged eye-witnesses to corroborate his basic theory, but their testimony was so incredible that the trial judge issued a bench warrant for their arrest on charges of perjury. Suffice it to say that we have carefully examined and weighed all of the evidence in this case, and the credible evidence does not preponderate against the verdict of the jury.

█ Error is assigned upon the form of the verdict. This is bottomed upon the fact that when the jurors were individually polled six of them answered, "Voluntary manslaughter, 10 year minimum". (The other six said, "Voluntary manslaughter, 10 years".) It is very significant, however, that the foreman had already reported a proper verdict, which had been agreed to by all of the jurors. We quote from the record:

"The Court: Mrs. Hillis and gentlemen of the jury, have you agreed upon a verdict?

"A Juryman: We have.

"The Court: What is your verdict?

"A Juryman: We find the defendant guilty, voluntary manslaughter.

"The Court: And fix his punishment at what?

"A Juryman: Ten years.

"The Court: Mrs. Hillis and gentlemen of the jury, your foreman says you find the defendant guilty of voluntary manslaughter and you fix his punishment at not more than 10 years in the penitentiary, so say you all? Will you state it by raising your right hand, please?"

Thereafter, the jury was polled upon request as aforesaid, and six of them apparently used the word "minimum" in referring to what was technically the maximum term of years. No question was raised about the wording at that time. Counsel for defendant answered in the negative when specificially asked at that time if there was anything further. The verdict was accepted without any objection being registered as to its form, and a proper judgment fixing punishment at not less than two (2) nor more than ten (10) years was entered in due time.

The judge had carefully and properly charged the jury as to their duty in setting the punishment upon a finding of guilt. He charged:

" . . . if you so find, your verdict in such case should be: 'We find the defendant guilty of voluntary manslaughter and fix his punishment in the penitentiary for *blank* years.' You are to fix and report the longest term you think he should serve, not less than 2 nor more than 10 years."

We believe that it is clear that the jury (1) found Taylor guilty of voluntary manslaughter, and (2) set his maximum punishment at ten years imprisonment. The only inconsistency with this characterization is the use by six jurors of the word "minimum" when it was the maximum sentence that was being set; but obviously everybody understood what was meant, since no question was raised at that time, the verdict had already been properly reported by the foreman, and a proper judgment was

subsequently entered. We feel that it would be hypertechnical to void this verdict on this ground.

 Error is assigned upon the exclusion from evidence of photographs (1) purporting to depict Mrs. Taylor (an entertainer who toured Viet Nam) firing an artillery piece there, and (2) showing Mrs. Taylor posing in briefs, bare from the waist up. Neither of these pictures is sufficiently relevant to a legitimate controverted issue in the case, and we find no error in their exclusion.

Finally, a new trial is sought upon the basis of "newly discovered evidence". Taylor contends in an affidavit that a pair of jeans worn by him at the time of the shooting were found by him after the trial, behind a freezer in his home; and that "The imprint on these pants would definitely show that a billfold was carried in the right-hand pocket, and not the left as the State's chief witness had sworn". Another affidavit advises of a search of the shooting scene made by Taylor after his trial (six months after the shooting) and his finding a .22 calibre bullet hull buried in the ground at a spot which he theorizes supports his version of the shooting. We have no transcript of what occurred upon the hearing upon the motion for a new trial. The affidavits are in the technical record, and we find the jeans with the exhibits. No proof that the bullet hull was fired in the death weapon is presented. The authentication and hence the admissibility of the bullet hull is highly questionable, the probative value of its location under all of the circumstances highly speculative, and its production after the trial highly suspect. The jeans, which we have examined, do not "definitely show that a billfold was carried in the right-hand pocket".

The granting or refusing of a new trial on the basis of newly discovered evidence rests within the sound discretion of the trial court. Hawkins v. State, 220 Tenn. 383, 417 S.W.2d 774; Freshwater v. State, Tenn.Cr.App., 453 S.W.2d 446. We find no abuse of that discretion in this case.

The judgment of the trial court is affirmed.

DWYER and MITCHELL, JJ., concur.